UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ELIZABETH GRAVES,

     Plaintiff,

v.                          Civil Action No. 2:24-cv-00103

ELIZABETH HUFFMAN ELKINS,
BRANDON ELKINS,
PNC BANK, N.A.,
GOLDEN & AMOS, P.L.L.C.,
DOE CORPORATION 1-10,
DOE REAL ESTATE COMPANY 1-10,

     Defendants.

MEMORANDUM OPINION AND ORDER

     Pending is defendant PNC Bank, N.A.'s ("PNC") Motion for Dismissal (ECF No. 22), filed April 1, 2024.  PNC concurrently filed a memorandum in support (ECF No. 23); plaintiff responded (ECF No. 25) on April 15, 2024, and PNC filed it reply (ECF No. 29) on April 22, 2024.

I. BACKGROUND

A.   Factual Background

     This case arises out of the foreclosure of real property located at 114 Gettysburg Road, South Charleston, West Virginia ("the Property").  Amend. Compl. at ¶ 12, ECF No. 1-1.

Plaintiff purchased the Property in August 2019.  Id. at ¶¶ 11–12.  Plaintiff obtained a mortgage in the amount of $328,173 from Gateway Mortgage Group, a division of Gateway First Bank, and secured by a deed of trust on the Property.  Id. at ¶¶ 12–13.  At the time of purchase, Chris Eller was the trustee and Mortgage Electronic Registration System, Inc. ("MERS") acted as the nominee for Gateway Mortgage Group and was the beneficiary under the security instrument.  Id. at ¶¶ 14–15.

On June 2, 2023, MERS assigned and transferred all rights in the deed of trust to PNC.  Id. at ¶ 18.  Four months later, on October 18, 2023, Golden & Amos, PLLC ("Golden & Amos"), also a defendant in this action, was substituted as trustee.  Id. at ¶ 19.

According to the amended complaint, plaintiff received monthly mortgage statements from PNC between September 2019 and November 15, 2023.  Id. at ¶ 17.  PNC, through substitute trustee Golden & Amos, conducted a non-judicial foreclosure sale on November 30, 2023.  Id. at ¶¶ 19, 20, 22; PNC's Answer to Amend. Compl. ¶¶ 25, 70–72, ECF No. 21.

Plaintiff claims she was unaware of the foreclosure proceedings because Golden & Amos and PNC failed to deliver to her a copy of the notice of foreclosure and failed to ensure the required publication of the notice.  Amend. Compl. at ¶¶ 25–27.

2

Plaintiff says she received no notice that the security instrument was being accelerated or of her right to reinstate, right to cure, or right to bring a court action.  Id. at ¶ 27. Although she received monthly mortgage statements from PNC at her address at the Property, plaintiff says she did not receive any notices concerning the foreclosure proceedings at that address.  Id. at ¶ 48.

On December 29, 2023, plaintiff's next-door neighbors, defendants Elizabeth Huffman Elkins and Brandon Elkins ("the Elkins") served upon plaintiff a Notice to Vacate, stating that they had purchased the Property at a foreclosure sale and demanding she vacate the Property by January 29, 2024.  Id. at ¶ 23; see Notice to Vacate, Amend. Compl. Ex. 4, ECF No. 15 at 44. According to the amended complaint, Elizabeth Elkins told plaintiff that the Elkins purchased the property "prior to the notice of foreclosure being published in the newspaper in order to save the Plaintiff embarrassment."  Id. at ¶ 24.

The amended complaint also recounts a conversation plaintiff had with the Elkins in the spring of 2023, where plaintiff related that she was planning to sell the Property for financial reasons.  Id. at ¶ 31.  The Elkins allegedly asked plaintiff to wait before placing the Property on the market because they wanted to buy it, and based on that representation,

plaintiff delayed the sale.  Id. at ¶¶ 31–32.  The amended complaint further alleges that Elizabeth Elkins used her position as a real estate professional to purchase the Property without plaintiff receiving a notice of foreclosure and that it is conceivable that the Elkins intentionally deprived her of notice, perhaps by intercepting the notice of foreclosure to ensure they were able to purchase the home.  Id. at ¶¶ 34, 48.

Plaintiff does not dispute that she was in default on her mortgage payments at the time of the foreclosure, only that she did not receive the required notice from PNC and Golden & Amos.

B.  Procedural History

Plaintiff initiated this action by filing her initial complaint in the Circuit Court of Kanawha County on January 18, 2024.  See Initial Compl., Notice of Removal Ex. A, ECF No. 1-1. PNC removed to federal court pursuant to this court's federal question jurisdiction on March 1, 2024, based on a federal cause of action under the Fair Debt Collection Practices Act alleged in the initial complaint.  See Notice of Removal at 2, ECF No. 1; Initial Compl. Count III.  Plaintiff moved to amend the complaint (ECF No. 3) on March 5, 2024, and moved to remand (ECF No. 8) on March 18, 2024, based on lack of federal question jurisdiction under the proposed amended complaint.  Plaintiff

was granted leave to amend the complaint (ECF No. 10), and she filed her amended complaint (ECF No. 15) on March 27, 2024, which omitted the federal cause of action.  The court denied plaintiff's motion to remand, retaining jurisdiction over the remaining claims pursuant to the court's supplemental jurisdiction.  Mem. Op. & Order, Apr. 18, 2024, ECF No. 27.

The amended complaint asserts thirteen causes of action, five of which are against PNC: Count II alleges that PNC violated the notice provisions in the deed of trust, Amend. Compl. ¶¶ 56–58; Count III alleges that PNC violated West Virginia Code § 31-17A-16, id. at ¶¶ 59–60; Count IV alleges that PNC is liable for slander of title, id. at ¶¶ 61–67; Count VI alleges that PNC is liable for the tort of conversion, id. at ¶¶ 74–80; and Count VIII alleges that PNC is liable for intentional infliction of emotional distress, id. at ¶¶ 86–90.

Attached to the amended complaint are four exhibits: the Deed of Trust for the Property securing plaintiff's mortgage (Exhibit 1), ECF No. 15 at 27; the Assignment of the Deed of Trust to Chris Eller as trustee (Exhibit 2), ECF No. 15 at 40; the instrument substituting Golden & Amos as trustee in place of Chris Eller (Exhibit 3), ECF No. 15 at 41; and the letter-form Notice to Vacate sent by the Elkins to plaintiff (Exhibit 4), ECF No. 15 at 44.

On April 1, 2024, PNC filed both its answer to the amended complaint (ECF No. 21) and the instant motion to dismiss (ECF No. 22). Attached to its answer are two exhibits: the first consists of a number of documents from Golden & Amos concerning the foreclosure and related proceedings (Exhibit A), ECF No. 21 at 23; and the second consists of screen captures from the United States Postal Service ("USPS") parcel tracking website (Exhibit B), ECF No. 21 at 47. The Golden & Amos documents in Exhibit A consist of the following: Trustee's Report of Sale, Nov. 30, 2023 (ECF No. 21 at 23); Affidavit of Legal Publication of Posting, Nov. 23, 2023 (ECF No. 21 at 24); Publication of Notice of Trustee Sale (ECF No. 21 at 25-30); three Precautionary Notices, Oct. 27, 2023 (ECF No. 21 at 31-33) and four enclosed Notices of Foreclosure (ECF No. 21 at 34-41), addressed to plaintiff at (1) 114 Gettysburg Road, South Charleston, West Virginia 25309, (2) 1800 Roundbill Road, Unit 1602, Boomer, West Virginia 25301, and (3) 1800 Roundhill Road, Unit 1602, Boomer, West Virginia 25314, and (4) PO Box 183, Boomer, West Virginia 25301; Certified Mail Receipts, which are illegible (ECF No. 21 at 42-43); USPS Tracking Screen Capture (ECF No. 21 at 44-45); and Report of Sale Disclosure Form (ECF No. 21 at 46). Exhibit B consists of the following: three USPS Tracking Screen Captures (ECF No. 21 at 47-53); and an

additional USPS Tracking Screen Capture that reads only,

"Information Available Soon" (ECF No. 21 at 54).

PNC's memorandum in support of its motion to dismiss

(ECF No. 23) contains the same exhibits attached to its answer

to the amended complaint.  Mem. Supp. Exs. A—B, ECF Nos. 23-1 &

23-2.  Plaintiff's response (ECF No. 25), filed April 15, 2024,

has attached two exhibits, one being the affidavit of plaintiff

Elizabeth Graves, notarized April 15, 2024 (ECF No. 25-1), and

the second being a Mortgage Statement for the Property dated

November 16, 2024 (ECF No. 25-2).  PNC's reply (ECF No. 29),

filed April 22, 2024, has attached one exhibit, being a Notice

of Consumer's Right to Cure Default (Ex. 1, ECF No. 29 at 13—

15).

## II. LEGAL STANDARD

PNC's motion is styled as a "motion for dismissal" and

its accompanying memorandum is "in support of its motion for

judgment on the pleadings;" both are brought pursuant to Federal

Rule of Civil Procedure 12(c).  Rule 12(c) provides that a party

may move for judgment on the pleadings "[a]fter the pleadings

are closed — but early enough not to delay trial."  Fed. R. Civ.

P. 12(c).  Motions for judgment on the pleadings are reviewed

using the same standard as that of motions to dismiss made

pursuant to Rule 12(b)(6).  Williamson v. Prime Sports
Marketing, LLC, --- F.4th ---, 2024 WL 1980144, at *3–4 (4th
Cir. May 6, 2024) (citing Burbach Broad. Co. of Del. v. Elkins
Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002); Edwards v.
City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999); Pac. Ins.
Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 405 (4th Cir.
1998)).[1]

        The standard for Rule 12(b)(6) motions to dismiss is
one of facial plausibility.  See Edwards, 178 F.3d at 243
(citing Republican Party of N.C. v. Martin, 980 F.2d 943, 952
(4th Cir. 1992)) ("'The purpose of a Rule 12(b)(6) motion is to
test the sufficiency of a complaint . . . ." (internal quotation
marks omitted)).  A pleading must include "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2); see McCleary-Evans v. Md.

---

[1] PNC erroneously asserts that Rule 12(c) motions are adjudicated
using the Rule 56 motion for summary judgment standard.  See PNC
Mem. Supp. at 5–6 (citing Jeffers v. Wal-Mart Stores, Inc., 84
F. Supp. 2d, 775, 777 (S.D.W. Va. 2000); King v. Gemini Food
Servs., 438 F. Supp. 964, 966 (E.D. Va. 1976), aff'd, 562 F.2d
297 (4th Cir. 1977)).  While the cases PNC cites indeed support
that proposition, the breadth of cases decided by the Fourth
Circuit Court of Appeals, particularly those cases decided since
the seminal Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545
(2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009),
decisions, use the Rule 12(b)(6) motion to dismiss standard.
See, e.g., Williamson, 2024 WL 1980144; Short v. Hartman, 87
F.4th 593 (4th Cir. 2023); Occupy Columbia v. Haley, 738 F.3d
107, 115 (4th Cir. 2013); Burbach Broad. Co., 278 F.3d at 405–
06; Edwards, 178 F.3d at 243.

Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th
Cir. 2015); Twombly, 550 U.S. at 545 (to withstand a Rule
12(b)(6) motion to dismiss, a complaint must plead sufficient
facts "to state a claim to relief that is plausible on its
face"); Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208
(4th Cir. 2017).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged.  Iqbal, 556 U.S. at 678.

        "[A] plaintiff is not required to plead factual
allegations in great detail, but the allegations must contain
sufficient factual heft to allow a court . . . to infer more
than the mere possibility of that which is alleged." Nanni v.
Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017)
(internal quotation marks omitted).  "Bare legal conclusions
'are not entitled to the assumption of truth' and are
insufficient to state a claim." King v. Rubenstein, 825 F.3d
206, 214 (4th Cir. 2016) (quoting Iqbal, 556 U.S. at 679).

        In evaluating a Rule 12(b)(6) motion to dismiss, the
court must first "accept as true all of the factual allegations
contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94
(2007) (internal quotation marks omitted), and then "draw[ ] all
reasonable factual inferences from those facts in the

plaintiff's favor." Edwards, 178 F.3d at 244. If, even then, the complaint fails to state a claim, the motion to dismiss is granted. See Fed. R. Civ. P. 12(b)(6).

A Rule 12(c) motion for judgment on the pleadings can rely only on the pleadings and the exhibits attached thereto. See Fed. R. Civ. P. 12(d). Per Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Id. If this occurs, all parties must be given "a reasonable opportunity to present all the material that is pertinent to the motion." Id. "A court may, however, consider a 'written instrument' attached as an exhibit to a pleading, see Fed. R. Civ. P. 10(c), 'as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" Occupy Columbia, 738 F.3d at 116 (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)) (alteration in original).

There is little case law addressing what, precisely, qualifies as a written instrument. There is a circuit split as to whether an affidavit is a written instrument, and the Fourth Circuit, while it has noted this split, has not weighed in. See id. at 116–17 ("There is no uniform rule among the circuits with respect to whether an affidavit attached as an exhibit to a

pleading is a 'written instrument' such that it may be considered by a district court in resolving a Rule 12(b)(6) or Rule 12(c) motion."); see also Smith v. Hogan, 794 F.3d 249, 254 (2d Cir. 2015); Fin. Acquisitions Partners LP v. Blackwell, 440 F.3d 278 (5th Cir. 2006); Rose v. Bartle, 871 F.2d 331, 341 (3d Cir. 1989); 5A Wright & Miller, Federal Practice & Procedure Civ. § 1327 n. 2 (4th ed.).

The court considers the Deed of Trust, Assignment of Deed of Trust, Substitution of Trustee, and Notice to Vacate, all attached to the amended complaint, as written instruments that are integral to the complaint, and, their authenticity not being disputed by any party, the court will consider them while adjudicating the instant motion.  Similarly, it is appropriate for the court to consider the Trustee's Report of Sale, the Notice of Trustee Sale published in the Charleston Gazette, and the various Notices attached to PNC's answer.  It is less clear whether the certified mail receipts attached to PNC's answer are written instruments; whether or not it would be proper to do so, the court cannot consider them as they are utterly illegible. The Affidavit of Legal Publication and Posting attached to PNC's answer will not now be considered by the court.  Inasmuch as the USPS mail tracking screen captures do not describe what mail is being tracked or where it is being sent, these screen captures are useless in the resolution of this matter.  Attached to

11

plaintiff's response to the pending motion is the affidavit of the plaintiff, and the Mortgage Statement of November 16, 2023; the former will not be considered by the court at this time, but the latter mortgage statement will be considered.  Finally, the Notice of Consumer's Right to Cure Default, attached to PNC's reply, will be considered.

### III. ANALYSIS

A.  Count II – Failure to Provide Notice of Foreclosure
     Pursuant to the Deed of Trust

Count II of the amended complaint alleges that PNC violated sections 19 and 22 of the Deed of Trust by failing to provide plaintiff with the notices required by those provisions. Amend. Compl. at ¶¶ 56–58.  Section 19 of the Deed of Trust, "Borrower's Right to Reinstate After Acceleration," provides that the borrower shall have the right to discontinue acceleration and enforcement of the Security Instrument if the listed four conditions are met.[2]  Deed of Trust at 9, Amend.

---

[2] Those conditions are that borrower: (1) "pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;" (2) "cures any default of any other covenants or agreements;" (3) "pays all expenses and fees, as permitted by Applicable Law, incurred in enforcing this Security Instrument;" (4) "takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged."  Id.

Compl. Ex. 1.  If such reinstatement occurs, "Borrower's obligation to pay the sums secured . . . shall remain unchanged."  Id.  The right to reinstate is not available under this section if the acceleration was pursuant to section 18 of the Deed of Trust.[3]  Id.

Section 22, "Acceleration; Remedies," provides that the lender must give notice to the borrower before acceleration can occur.  Id. at 10.  That notice must specify:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date specified in the notice given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; and (e) such additional information as required by Applicable Law.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. . . .

Id.  Further, the lender must provide notice to the borrower if it intends to sell the property in response to default by the borrower, which notice must be by "public advertisement for the

---

[3] Section 18, "Transfer of the Property or a Beneficial Instrument in Borrower," which is noted in sections 19 and 22 as an exception to the prescribed remedy for acceleration, is inapplicable in the instant action, as it applies when the borrower sells or transfers the Property without lender's written consent, or when the Property is transferred by a borrower who is not a natural person.  Id. at 9.

time and in the manner prescribed by applicable law." Id.  The
borrower does not have the right to personal service of the
notice of such sale, nor does the notice have to be posted at
the courthouse.  Id.

          In addition to the above sections referred to by
plaintiff, two other sections of the Deed of Trust are relevant.
Section 15, "Notices," describes the steps that the trustee
and/or lender must follow in order to provide the borrower with
proper notice: (1) the notice must be in writing; (2) the notice
will be considered as having been given either when mailed, if
sent by first class mail, "or when actually delivered to
Borrower's notice address if sent by other means;" and (3) the
notice must be sent to the property address unless another
address has been designated.  Id. at 8–9.  Similarly, section
25, "Notice of Trustee's Sale," provides that a copy of any
notice of sale "shall be served on Borrower by certified mail,
return receipt requested, directed to Borrower . . . subsequent
to the execution and delivery of this Security Instrument."  Id.
at 11.

          The "applicable law" incorporated into the Deed of
Trust is, relevantly, West Virginia Code §§ 38-1-3 to -4.[4]

---

[4] Plaintiff argues that PNC violated West Virginia Code § 46A-2-
106, which requires certain notices be provided to consumers and
allows default to be cured by consumers.  See Pl.'s Resp. at 10;
W. Va. Code § 46A-2-106.  Yet this provision, part of the West

Section 38-1-3 says a trustee can only sell the subject property when, <u>inter alia</u>, the conditions precedent to sale in the deed of trust are met and notice of the sale has been given as prescribed in § 38-1-4.  Section 38-1-4 provides the following requirements for such notice:

> [(1) T]he trustee shall publish a notice of a trustee's sale as a Class II legal advertisement in compliance with the provisions of [West Virginia Code § 38-3-59], and the publication area for such publication shall be the county where the property is located[;] . . .
>
> [(2) A] copy of such notice shall be served on the grantor in such trust deed, or his agent or personal representative, by certified mail, return receipt requested, directed to the address shown by the grantors on the deed of trust or such other address given to the beneficiary of said trust deed or said beneficiary's agent or assignee in writing by the said grantor subsequent to the execution and delivery of the trust deed and notice shall be deemed complete when such notice is mailed to the aforesaid address, notwithstanding the fact that such mail may be returned as refused or undeliverable[;] . . .
>
> [(3)] Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of sale; (b) the names of the parties to the deed under which it will be made; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of

---

Virginia Consumer Credit Protection Act, does not apply to mortgages unless the parties specifically agree otherwise, and is thus inapplicable here.  <u>See</u> <u>Hafer v. Skinner</u>, 542 S.E.2d 852, 856 (W. Va. 2000); <u>Burdette v. Skeens</u>, No. 16-0342, 2017 WL 657000 (W. Va. Feb. 17, 2017) (unpublished memorandum decision).

the land or other property or both conveyed
thereby; and (f) the terms of sale.

W. Va. Code § 38-1-4.  The section further notes that the listed
methods of serving notice are not exclusive; while those
provisions must be complied with, notice may also be served by
other methods.  Id.

PNC claims it satisfied the requirements of the deed
of trust and the relevant code sections because it sent to
plaintiff the notice of foreclosure via certified mail to the
Property and to three other addresses, and it twice published a
notice of foreclosure sale in the Charleston Gazette.  See PNC's
Mem. Supp. at 9–10.

Plaintiff says she "did not receive a copy of the
notice of foreclosure."  Amend. Compl. at ¶ 25.  Plaintiff
claims that PNC and its agent, trustee Golden & Amos, failed to
provide her with a notice of default, notice of her right to
cure, notice of her right to reinstate the mortgage after
acceleration, and notice of her right to bring a court action,
among other things.  Pl.'s Resp. at 9–10.  Plaintiff does not
challenge the sufficiency of the notices attached to PNC's
answer, arguing only that she did not receive them.

Plaintiff's assertion that she did not receive notice
is unavailing; West Virginia follows the "mailbox rule," which
is incorporated into the Deed of Trust here, and means that

16

notice is effectuated when it is sent via certified mail – not when or whether the intended recipient actually receives it (if at all).  See W. Va. Code § 38-1-4 ("notice shall be deemed complete when such notice is mailed to the aforesaid address, notwithstanding the fact that such mail may be returned as refused or undeliverable") see also Dennison v. Jack, 304 S.E.2d 300, 308 (W. Va. 1983) (upholding the "mailbox rule").  Yet plaintiff's allegations that PNC did not adequately provide notice in compliance with the deed of trust and code provisions are sufficient to state a claim.

The evidence that PNC proffers to show that it satisfied its obligations are insufficient at this stage of the proceedings.  PNC cannot show at present that it properly sent the required notices to the plaintiff.  At the close of discovery PNC will have the opportunity to again submit affidavits, mail receipts, and whatever other legible evidence that it sees fit, being the proper time to consider such evidence.

Finally, the court notes that PNC states multiple times that it sent notice to four different addresses.[5]

_____

[5] According to PNC, it sent the notices to plaintiff, via certified mail, to the following four addresses: (1) 114 Gettysburg Road, South Charleston, West Virginia 25309 (the Property); (2) 1800 Roundhill Road, Unit 1602, Boomer, West Virginia 25301; (3) 1800 Roundbill Road, Unit 1602, West

Plaintiff says she has never been associated with three of the addresses, two of which are in Boomer, West Virginia, and one of which does not appear to be a complete address, being merely a street and unit number without a town listed.  Pl.'s Resp. at 10–11.  Regardless, one of the addresses PNC says it mailed the notices was the 114 Gettysburg Road address – the Property – which, per applicable law, is an appropriate place to send notice and which plaintiff agrees was and remains her current residence.

B.  <u>Count III – Violation of the West Virginia Safe Mortgage Licensing Act</u>

Count III of the amended complaint alleges that PNC violated the West Virginia Safe Mortgage Licensing Act (the "Mortgage Act"), West Virginia Code § 31-17A-1 <u>et</u> <u>seq.</u> (2009), by "defrauding Plaintiff;" "[e]ngaging in an unfair or deceptive practice toward Plaintiff;" and "[o]btaining the [Property] by fraud o[r] misrepresentation."  Amend. Compl. at ¶¶ 59–60.  Such practices are prohibited by the Mortgage Act at § 31-17A-16(1)–(3).

The parties' arguments on whether plaintiff's claims are time-barred under the Mortgage Act and whether she

_____

Virginia 25314; and (4) P.O. Box 183, Boomer, West Virginia 25301.  PNC's Mem. Supp. at ¶ 10.

sufficiently alleges a violation of the Mortgage Act are irrelevant.  The Mortgage Act does not provide a private cause of action; only the West Virginia Commissioner of Financial Institutions has the authority to take enforcement action.  <u>See</u> W. Va. Code § 31-17A-12 (detailing enforcement authority); § 31-17A-2(a) (defining "Commissioner").  Thus, Count III of plaintiff's amended complaint is dismissed.

C.   <u>Count IV — Slander of Title</u>

Count IV of the amended complaint asserts that PNC's actions in causing the sale of the Property, without the required notice, and causing to be published in the Kanawha County Clerk's records a deed conveying the Property to the Elkins, "caused damages that can never be recovered as a result of the now diminished value of the property," and thus committed slander of title.  Amend. Compl. at ¶¶ 61–67.

The seminal West Virginia case regarding slander of title is <u>TXO Production Corp. v. Alliance Resources Corp.</u>, 419 S.E.2d 870 (W. Va. 1992), <u>aff'd</u> 509 U.S. 443 (1993), and <u>holding modified by</u> <u>Alkire v. First National Bank of Parsons</u>, 475 S.E.2d 122 (W. Va. 1996) (modifying holding as to punitive damages award).  In <u>TXO</u>, the West Virginia Supreme Court of Appeals affirmed that slander of title is actionable under West Virginia common law and laid out the following elements for a slander of

title claim: "(1) publication of (2) a false statement (3) derogatory to plaintiff's title (4) with malice (5) causing special damages (6) as a result of diminished value in the eyes of third parties."  Syl. Pts. 1–2, id.  The court also held that slander of title could occur when a person claimed title for herself without a reasonable basis for doing so.  Id. at 879.

The TXO court wrote that, "[a]s as general rule, courts have found that wrongfully recording an unfounded claim to the property of another is actionable as slander of title . . . provided that the other elements for slander of title, namely malice and special damages, are present."  Id. at 880 (citing Annotation, "Recording of Instrument Purporting to Affect Title as Slander of Title," 39 A.L.R.2d 840, and cases cited therein).  The court further announced in TXO that a slander of title action in West Virginia follows the guidelines of the Restatement (Second) of Torts (1977).  Id. at 879.

The malice standard used in West Virginia for slander of title actions is the same as the actual malice standard used in defamation suits, the two actions being closely related.  It is often referred to as "actual malice" or, more recently, "knowledge of falsity or reckless disregard to the truth or falsity."  Restatement (Second) of Torts § 623A, cmt. d (1977); see also Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 78

(W. Va. 1983).  The Supreme Court has defined "actual malice" as done "with knowledge that [the statement] was false or with a reckless disregard of whether it was false or not."  <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279–80 (1964) (discussing intent required for a finding of defamation).

"Actual malice requires 'much more' than mere negligence."  <u>Blankenship v. NBCUniversal, LLC</u>, 60 F.4th 744, 759 (4th Cir.), <u>cert. denied</u>, 144 S. Ct. 5 (2023) (quoting <u>Hatfill v. N.Y. Times Co.</u>, 532 F.3d 312, 325 (4th Cir. 2008)).

> [T]he actual malice standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term. <u>See Beckley Newspapers Corp. v. Hanks</u>, 389 U.S. 81, 88 (1967) (per curiam); <u>Henry v. Collins</u>, 380 U.S. 356 (1965) (per curiam). Actual malice . . . requires at a minimum that the statements were made with a reckless disregard for the truth. . . . [T]he defendant must have made a false publication with a "high degree of awareness of . . . probable falsity," <u>Garrison v. Louisiana</u>, 379 U.S. 64, 74 (1964), or must have "entertained serious doubts as to the truth of his publication," <u>St. Amant [v. Thompson]</u>, 390 U.S. [727,] 731 [(1968)].

<u>Harte-Hanks Commc'ns, Inc. v. Connaughton</u>, 491 U.S. 657 (1989). Thus, an honest mistake does not evidence malice.  <u>See</u> <u>TXO</u>, 419 S.E.2d at 880.  "[A] mere excess of zeal by poorly supervised, low[-]level employees," <u>id.</u> at 881, or failure to conduct a title search, <u>GMO Forestry Fund 3, L.P. v. Ellis</u>, 337 F. App'x

279, 280 (4th Cir. 2009) (per curiam) (unpublished), is
insufficient.

Regardless of whether PNC published a false statement,
plaintiff has failed to allege that PNC acted with the malice
necessary to maintain an action for slander of title.  The court
in TXO, examining the evidence in the light most favorable to
the appellees, found that "TXO intentionally and maliciously
recorded a quitclaim deed that it knew to be without any basis
in fact because [appellee] explicitly told TXO [contrary
information]."  419 S.E.2d at 880–81 (emphasis in original).
"Furthermore, the record shows that this was not an isolated
incident on TXO's part . . . but rather part of a pattern and
practice by TXO to defraud and coerce those in positions of
unequal bargaining power vis a vis TXO's superior legal
firepower."  Id. at 881.  Here, plaintiff claims only that PNC
violated the law and the deed of trust by failing to provide her
with the required notices, not that PNC intentionally withheld
this information from her or otherwise acted with ill will
during the process.

Compared with the allegations in TXO, where there was
a pattern of suspect behavior in order for TXO to gain a
monetary advantage, or even with the allegations plaintiff makes
against the Elkins (whom, plaintiff alleges, deceived her into

22

retaining the house until it was foreclosed upon and possibly stole the notices of foreclosure from plaintiff's mailbox so she would be unable to cure the default), the lack of allegations of malicious behavior on the part of PNC is stark.  Even in the slander of title count itself, plaintiff does not allege that PNC acted with malice, only that PNC acted "in conscious violations of the law."  See Amend. Compl. at ¶¶ 62, 63.  The court acknowledges that this is a legal conclusion and is not entitled to the presumption of truth; but even taken as true, a disregard for the law is not the same as a disregard for the truth.  Plaintiff has failed to allege that PNC or Golden & Amos acted with the requisite malicious intent.  Thus, Count IV of plaintiff's amended complaint is dismissed.

D.    Count VI – Conversion

          Count VI of the amended complaint alleges that PNC, by its actions regarding the foreclosure of the Property, committed the tort of conversion by causing plaintiff to be "denied possession of her own home."  Amend. Compl. at ¶¶ 74–80.  Conversion is defined as "[t]he tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner."  Syl. Pt. 1, Arnold v. Kelly, 4 W. Va. 642 (1871) (emphasis added); see also Jordan v. Jenkins, 859 S.E.2d 700, 713 n. 11 (W. Va. 2021); Mountaineer

Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va., 854
S.E.2d 870, 885-86 (W. Va. 2020).  As the allegedly unlawful
taking in the present action is of a piece of real property —
not personal property — Count VI of the amended complaint must
be dismissed.

E.     Count VIII — Intentional Infliction of Emotional Distress

        Count VIII of the amended complaint asserts that PNC,
by its actions regarding the foreclosure of the Property,
committed upon plaintiff the tort of intentional infliction of
emotional distress.  Amend. Compl. at ¶¶ 85-90.  The tort of
intentional infliction of emotional distress has been thoroughly
discussed by the West Virginia Supreme Court of Appeals in
several cases, including Travis v. Alcon Laboratories, Inc., 504
S.E.2d 419 (W. Va. 1998).  In that case, the court listed the
elements of an intentional or reckless infliction of emotional
distress claim thusly:

> It must be shown: (1) that the defendant's
> conduct was atrocious, intolerable, and so
> extreme and outrageous as to exceed the bounds
> of decency; (2) that the defendant acted with
> the intent to inflict emotional distress, or
> acted recklessly when it was certain or
> substantially certain emotional distress
> would result from his conduct; (3) that the
> actions of the defendant caused the plaintiff
> to suffer emotional distress; and, (4) that
> the emotional distress suffered by the
> plaintiff was so severe that no reasonable
> person could be expected to endure it.

Syl. Pt. 3, id.

The first element, that the conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," requires that the conduct "be more than unreasonable, unkind or unfair," but rather that it "truly offend[s] community notions of acceptable conduct." Alcon Lab'ys, 504 S.E.2d at 425 (citation omitted). The West Virginia Supreme Court of Appeals has explained that liability exists

> only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Tanner v. Rite Aid of W. Va., Inc., 461 S.E.2d 149, 156–57 (W. Va. 1995) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)) (internal quotation marks omitted); see also Alcon Lab'ys, 504 S.E.2d at 425–26. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." Courtney v. Courtney, 413 S.E.2d 418, 423 (W. Va. 1991); see also Hines v. Hills Dep't Stores, Inc., 454 S.E.2d 385, 389 (W. Va. 1994).

When faced with a claim of intentional infliction of emotional distress, the court first determines the threshold

legal question of whether the conduct alleged "may reasonably be considered outrageous."  Syl. Pt. 4, <u>Alcon Lab'ys</u>, 504 S.E.2d 419.  The determination of whether the conduct was in fact outrageous remains to be answered by the jury.  <u>Id.</u>

Plaintiff has failed to allege that PNC's actions were sufficiently extreme and outrageous to satisfy the first element of the tort of intentional infliction of emotional distress. While the allegations are likely sufficient to satisfy the second, third, and fourth elements, plaintiff does not allege that PNC's conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency."  Plaintiff does not deny that she was in default on her mortgage payments; the mortgage statement plaintiff attached to her response to PNC's instant motion shows that plaintiff owed over twenty thousand dollars in mortgage payments and that she had been delinquent on her payments since at least June of 2023.  <u>See</u> Mortgage Statement, Pl.'s Resp. Ex. 2.  PNC is, at least in part, in the business of home loans and it is proper and expected for such an entity to foreclose upon a property when the borrower has been in default on the mortgage payment for months.  Indeed, foreclosure is a legal remedy available in such circumstances to lenders such as PNC.  While the foreclosure, and particularly the alleged lack of notice, was undoubtedly a terrible ordeal for the plaintiff, she has failed to allege that

26

PNC's conduct was extreme and outrageous.  Thus, Count VIII must be dismissed.

### IV. CONCLUSION

Based on the foregoing, it is ORDERED that PNC's Motion for Dismissal (ECF No. 22) be, and it hereby is, GRANTED in part and DENIED in part, as follows:

1.  PNC's motion be, and it hereby is, DENIED as to Count II of the amended complaint; and

2.  PNC's motion be, and it hereby is, GRANTED as to Counts III, IV, VI, and VIII of the amended complaint for failure to state a claim under which relief can be granted.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: May 24, 2024

John T. Copenhaver, Jr.
Senior United States District Judge